UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. SPECIALTY INSURANCE COMPANY,

Plaintiff,

-v-

HARLEYSVILLE WORCESTER INSURANCE COMPANY,

Defendant.

CIVIL ACTION NO.: 20 Civ. 7691 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff U.S. Specialty Insurance Company ("USSIC") brought this declaratory judgment action against Defendant Harleysville Worcester Insurance Company ("Harleysville"). (ECF No. 1). USSIC seeks, inter alia, a declaration that Harleysville has a duty to defend and indemnify in connection with a state-court personal injury action. (Id. ¶¶ 32–41). USSIC has moved for partial summary judgment with respect to its duty-to-defend claim. (ECF No. 32 (the "Motion")). For the reasons set forth below, USSIC's Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The following facts are summarized from USSIC's Rule 56.1 Statement of Undisputed Material Facts (ECF No. 35), Harleysville's Opposition to USSIC's Rule 56.1 Statement of Undisputed Facts (ECF No. 38-1), and their accompanying exhibits. (ECF Nos. 33; 34; 38-2). The facts are undisputed unless otherwise noted.

1. **The Contract**

Non-parties 370 Seventh Avenue Associates, LLC (the "Owner")[1] and Aggressive Heating,

Inc. ("Aggressive") entered into a contract pursuant to which Aggressive was to perform an oil-

to-gas boiler conversion project (the "Project") for the Owner (the "Contract").  (ECF No. 33-3;

35 ¶ 13).  The Contract, which defines Aggressive as the "Contractor," provided that:

> **§ 3.3.1**  The Contractor shall supervise and direct the Work, using the Contractor's
> best skill and attention.  The Contractor shall be solely responsible for, and have
> control over, construction means, methods, techniques, sequences and
> procedures and for coordinating all portions of the Work under the Contract,
> unless the Contract Documents give other specific instructions concerning these
> matters.  If the Contract Documents give specific instructions concerning
> construction means, methods, techniques, sequences or procedures, the
> Contractor shall evaluate the jobsite safety thereof and, except as stated below,
> shall be fully and solely responsible for the jobsite safety of such means, methods,
> techniques, sequences or procedures.  If the Contractor determines that such
> means, methods, techniques, sequences or procedures may not be safe, the
> Contractor shall give timely written notice to the Owner and [the] Architect and
> shall not proceed with that portion of the Work without further written
> instructions from the Architect.  If the Contractor is then instructed to proceed
> with the required means, methods, techniques, sequences or procedures without
> acceptance of changes proposed by the Contractor, the Owner shall be solely
> responsible for any loss or damage arising solely from those Owner-required
> means, methods, techniques, sequences or procedures.

> **§ 3.3.2**  The Contractor shall be responsible to the Owner for acts and omissions
> of the Contractor's employees, Subcontractors and their agents and employees,
> and other persons or entities performing portions of the Work for, or on behalf of,
> the Contractor or any of its Subcontractors.

---

[1] In the Motion, USSIC refers only to a single "Owner," while the Complaint defined "Owners" to include
370 Seventh Avenue Associates LLC and The Feil Organization, Inc.  (Compare ECF No. 35 ¶ 4 ("In this
action, USSIC seeks declarations that Harleysville has a duty to defend and indemnify 370 Seventh Avenue
Associates, LLC (the 'Owner') in the Underlying Action.") with ECF No. 1 ¶ 1 ("This is an action for
declaratory relief and contribution arising from defendant Harleysville's breach of its obligation to defend
and indemnify 370 Seventh Avenue Associates LLC and The Feil Organization, Inc. (collectively, 'the
Owners'), as additional insureds under [the Harleysville Policy].")).  Given the parties' use of the singular,
Owner, in their filings relating to the Motion (see ECF Nos. 35; 36; 38), and the lack of a dispute of material
fact on this point (see Tr. of Aug. 12, 2021 Hr'g (ECF No. 49) at 4:21–5:12), the Court will also use the
singular, Owner.

> **§ 3.3.3**  The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

(ECF No. 33-3 at 23).  The Contract required Aggressive to purchase insurance that named the Owner as an "additional insured[] for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations. . ." (Id. at 40).

Aggressive entered into a subcontract with E.M. & E.M. Chimney and Masonry Repair, Inc. ("E.M."), pursuant to which E.M. was to perform the work on the Project that Aggressive had agreed in the Contract to perform for the Owner (the "Subcontract").  (ECF Nos. 33-4; 35 ¶ 16).

## 2.  The Insurance Policies

### a.  The Harleysville Policy

As required by the Contract, Aggressive obtained a commercial general liability ("CGL") insurance policy from Harleysville for the period July 1, 2013 to July 1, 2014 (the "Harleysville Policy").  (ECF Nos. 33-5 at 4; 35 ¶ 17).  The Harleysville Policy sets limits of $1 million per occurrence and $2 million in the aggregate.  (ECF Nos. 33-5 at 12; 35 ¶ 18).  The Harleysville Policy contains an endorsement entitled "Additional Insured — Owners, Lessees or Contractor — Automatic Status When Required in Construction Agreement With You" (the "Additional Insured Endorsement").  (ECF Nos. 33-5 at 34; 35 ¶ 19).  The Endorsement provides:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.**  Your acts or omissions; or

     **2.**  The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

(ECF Nos. 33-5 at 34; 35 ¶ 19).

     The Harleysville Policy's "Other Insurance" provision (the "Other Insurance Provision")

states:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
>     **a. Primary Insurance**
> > This insurance is primary except when Paragraph **b**. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c**. below.
>
>     **b. Excess Insurance**
>
> > **(1)** This insurance is excess over:
> > **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
> > > **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
> > > . . .
> > **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of endorsement.
> >
> > **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
> >
> > **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
> > **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(ECF Nos. 33-5 at 25–26 ¶ 4; 35 ¶ 20).

The Harleysville Policy also has an endorsement entitled "Other Insurance Amendment"

(the "Amendment"), which states:

Any coverage provided by . . . CG 20 33 Additional Insured — Owners, Lessees or Contractors — Automatic Status When Required in Construction Agreement with You . . . to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless a written contract specifically requires that this insurance be primary and that the additional insured's primary coverage be non-contributory.

Even if the requirements of the above paragraph are met, this coverage shall share with other insurance available to the additional insured which is conferred onto said person or organization by a separate additional insured endorsement.  This cost sharing shall be pursuant to Section IV, paragraph 4.c., Method of Sharing . . .

(ECF Nos. 33-5 at 35; 35 ¶ 21).

### b. The USSIC Policy

The Owner is the named insured under a CGL insurance policy that USSIC issued for the period June 17, 2013 to June 17, 2014 (the "USSIC Policy").  (ECF Nos. 34-1 at 5; 35 ¶ 22).[2]  The USSIC Policy sets limits of $1 million per occurrence and $2 million in the aggregate, and applies in excess of a self-insured retention of $100,000 each occurrence (the "SIR").  (ECF Nos. 34-1 at 20; 35 ¶ 23).  The USSIC Policy defines the SIR as "the amount of dollars including 'loss adjustment expense' for which the Named Insured is responsible for each 'occurrence' or offense.  This amount is charged to the 'stop loss aggregate'."  (ECF No. 34-1 at 38 ¶ 7).[3]

The USSIC's "Self-Insured Retention Endorsement Loss Adjustment Expense Included in Retention," (the "SIR Endorsement"), which sets the SIR at $100,000 per occurrence, provides:

The Insurance provided by this policy is subject to the following additional provisions:

1. The Limits of Insurance shown in the Declarations will apply in excess of the "self-insured retention" designated in the Schedule above.  You agree not to reinsure the retained limit without our knowledge and written permission. Our obligation under the policy applies only to the amount excess of the "self-insured retention".  This policy will not drop down to assume or satisfy your obligation under the "self-insured retention".

The "self-insured retention" limit shown in the Schedule will be reduced by any "loss adjustment expense" you incur.

You have the obligation to provide proper defense and investigation of any claim.  We have the right, but no obligation, in all cases, at our own expense

---

[2] The "Named Insured" under the USSIC Policy is "Broadwall Management Corporation."  Although the exact relationship between the Owner and Broadwall Management Corporation is not evident from the record, it is undisputed that the Owner qualifies as a Named Insured under the USSIC Policy.  (ECF No. 49 at 4:4-17).

[3] The USSIC Policy defines "loss adjustment expense" as "claim expenditures including, but not limited to, defense costs, court costs, and such other costs that are reasonably necessary for the proper defense and investigation of any claim," and "stop loss aggregate" as "the maximum amount of dollars paid by the Named Insured as the 'self-insured retention' for all 'occurrences' or offenses which occur during the policy period . . ."  (ECF No. 34-1 at 38 ¶ 7).

to assume charge of the defense and/or settlement of any claim, and, upon our written request, you must tender such portion of the "self-insured retention" as we may deem necessary to complete in the settlement of such claim.

Once the "self-insured retention" limit shown in the Schedule above has been properly exhausted, we will have the right and duty to defend you against any claim or suit.

You will accept any offer of settlement within the "self-insured retention" and deemed reasonable by us.  We will not pay any loss, cost or expense above what we would have paid had the loss been settled for any reasonable offer within the "self-insured retention."

(ECF Nos. 34-1 at 37; 35 ¶ 24).

The USSIC Policy also contains the same Other Insurance Provision as appears in the Harleysville Policy, but it does not contain the Amendment.  (ECF Nos. 34-1 at 31–32; 35 ¶ 25; 49 at 11:5-12).

### 3.  The Underlying Action

On September 12, 2016, Craig Garcia, an employee of E.M., filed a complaint in New York State Supreme Court, Suffolk County, alleging that he was injured on May 20, 2014 while working at a construction project on the Owner's premises (the "Underlying Action").  (ECF Nos. 33-1; 35 ¶¶ 6–7).  Garcia asserted claims for negligence and under the New York Labor Law against the Owner and The Feil Organization, Inc. ("Feil").  (ECF Nos. 33-1; 35 ¶ 8–9).  On March 2, 2017, the Owner filed in the Underlying Action a third-party complaint asserting against Aggressive claims for breach of contract, contractual indemnification, common law indemnification, and contribution (the "Third Party Complaint").  (ECF Nos. 33-2; 35 ¶ 11).  In the Third Party Complaint, the Owner alleged that, if Garcia sustained any damages, "then such damages were

caused solely by reason of the primary, active and affirmative negligence, recklessness and/or breach of contract of Aggressive . . . ."  (ECF Nos. 33-2 at 9 ¶ 20; 35 ¶ 12).

On December 13, 2016, the Owner tendered to Aggressive its defense in the Underlying Action.  (ECF Nos. 33-8; 35 ¶ 26).  Harleysville responded to the Owner with a reservation of rights, and later agreed to defend Aggressive in the Underlying Action under a reservation of rights.  (ECF Nos. 33-9; 33-10; 35 ¶¶ 27–28).  The Owner re-tendered its defense to Harleysville, in response to which Harleysville asserted that "it has no duty to defend" the Owner.  (ECF Nos. 35 ¶ 29; 38-1 ¶ 15).  USSIC is currently defending the Owner in the Underlying Action.  (ECF No. 34 ¶ 4).

### B. Procedural Background

On September 18, 2020, USSIC filed the Complaint seeking a declaratory judgment against Harleysville that: (i) USSIC is an additional insured under the Harleysville Policy; (ii) Harleysville has a duty to defend the Owner in the Underlying Action; and (iii) Harleysville has a duty to indemnify the Owner for any damages assessed against the Owner in the Underlying Action.  (ECF No. 1 ¶¶ 28–41).  USSIC also asserts a contribution claim against Harleysville for all amounts the Owner has paid to defend against the Underlying Action.  (Id. ¶¶ 42–45).  On November 24, 2020, Harleysville filed its Answer.  (ECF No. 15).

On March 23, 2021, USSIC filed the Motion, which seeks a declaration that: (i) Harleysville has a duty to defend the Owner in the Underlying Action; (ii) Harleysville is responsible for the first $100,000 of the Owner's defense costs in the Underlying Action; and (iii) Harleysville and USSIC are each responsible for 50% of the Owner's defense costs in excess of $100,000 in the

Underlying Action.  (ECF No. 32).  On March 26, 2021, Harleysville filed its Opposition to the

Motion, (ECF No. 38), and on April 2, 2021, USSIC filed its Reply.  (ECF No. 39).

The parties consented to have all proceedings in this case conducted by a Magistrate

Judge.  (ECF No. 18).

### III.DISCUSSION

**A.** **Legal Standards**

      **1.** **Motion for summary judgment**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary

judgment motion, the district court must resolve all ambiguities, and credit all factual inferences

that could rationally be drawn in favor of the party opposing summary judgment and determine

whether there is a genuine dispute as to a material fact, raising an issue for trial."  McCarthy v.

Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal citations omitted).  "Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).

"Material facts are those which 'might affect the outcome of the suit under the governing

law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'"  Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)

(quoting Anderson, 477 U.S. at 248).  "[I]n ruling on a motion for summary judgment, a judge

must ask [her]self not whether [s]he thinks the evidence unmistakably favors one side or the

other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]"  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996)).

## 2.  Contract interpretation

Insurance policies are interpreted "like 'any ordinary contract.'"  Utica Mut. Ins. Co. v. Munich Reins. Am., Inc., 7 F.4th 50, 56 (2d Cir. 2021) (quoting Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., 957 F.3d 337, 344 (2d Cir. 2020)).  "The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement."  Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157 (2d Cir. 2000) (citation omitted); see Parks Real Est. Purch. Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (explaining that "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.") (citations omitted).  A court must construe a contract "so as to give full meaning and effect to all of its provisions."  Am. Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277 (1st Dep't 1990) (citation omitted).

In interpreting an insurance contract under New York law, which the parties agree applies here (ECF Nos. 38; 39), courts "begin with the terms of the [policy] itself to see if the intent of the parties can be gleaned without resort to extrinsic evidence."  Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 617 (2d Cir. 2001).  "An insurance policy should be read in light of common speech and the reasonable expectations of a businessperson[.]"  Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 13 A.D.3d 599, 600 (2d Dep't 2004) (internal citations omitted).  New York courts commonly "refer to the dictionary to determine the plain and ordinary meaning of words to a

contract." Mazzola v. Cnty. of Suffolk, 143 A.D.2d 734, 735 (2d Dep't 1988). "In the absence of

guidance from the policy language, courts ask whether a body of law or an established custom

or usage provides a definition." Beazley Ins. Co. v. ACE Am. Ins. Co., 880 F.3d 64, 69 (2d Cir. 2018);

see Hugo Boss, 252 F.3d at 617 ("For it is quite possible that even where a contract does not

define a particular—and potentially ambiguous—term, a body of state law or an established

custom fills in the gaps left by the drafters."). Where neither the policy nor state law defines a

disputed term, "a court may find a policy term unambiguous where that term has a clear meaning

in federal law." Beazley, 880 F.3d at 69.

    "Under New York law, 'unambiguous provisions of an insurance contract must be given

their plain and ordinary meaning, and the interpretation of such provisions is a question of law

for the court.'" PB Americas Inc. v. Cont'l Cas. Co., 690 F. Supp. 2d 242, 249 (S.D.N.Y. 2010)

(quoting Vigilant Ins. Co. v. Bear Stearns Cos., 10 N.Y.3d 170, 178 (2008) (internal citations

omitted)); see 10 Ellicott Square Ct. Corp. v. Mtn. Valley Indem. Co., 634 F.3d 112, 119 (2d Cir.

2011) (explaining that courts "must give 'unambiguous provisions of an insurance contract . . .

their plain and ordinary meaning.'") (quoting Essex Ins. Co. v. Laruccia Constr., Inc., 71 A.D.3d

818, 819 (2d Dep't 2010)). Whether a contractual provision is ambiguous is a "threshold question

of law to be determined by the court." Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co., 411

F.3d 384, 390 (2d Cir. 2005); see Munich Reins., 2021 WL 3197017, at *3 ("Whether a contract is

ambiguous is a question of law, as is the meaning of an unambiguous contract."). "An ambiguity

exists where the terms of an insurance contract could suggest 'more than one meaning when

viewed objectively by a reasonably intelligent person who has examined . . . the entire integrated

agreement and who is cognizant of the customs, practices, usages and terminology as generally

11

understood in the particular trade or business.'"  Morgan Stanley Grp. v. New Eng. Ins., 225 F.3d

270, 275 (2d Cir. 2000) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir.

1997)).  As one court in this District has explained:

> A contract [provision] is not ambiguous "simply because the parties urge different
> interpretations," or if one side's reading "strain[s] the contract language beyond
> its reasonable and ordinary meaning."  Simply put, a contract [provision] is not
> ambiguous where it "has a definite meaning, and where no reasonable basis exists
> for a difference of opinion about that meaning."

Union Switch & Signal, Inc. v. City of New York, No. 92 Civ. 6771 (MGC), 1994 WL 570789, at *2

(S.D.N.Y. Oct. 17, 1994) (first quoting Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428

(2d Cir. 1992); and then quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 149 (2d Cir. 1993)).

A court may not "disregard 'the plain meaning of the policy's language . . . in order to find an

ambiguity where none exists.'"  10 Ellicott Square Ct. Corp., 634 F.3d at 119 (quoting Empire Fire

& Marine Ins. Co. v. Eveready Ins. Co., 48 A.D.3d 406, 407 (2d Dep't 2008).  Finally, a court may

not consider extrinsic evidence in determining whether a provision is ambiguous.  See Bailey v.

Fish & Neave, 8 N.Y.3d 523, 528 (2007) ("Whether a contract is ambiguous is a question of law

and extrinsic evidence may not be considered . . . .") (quoting S. Rd. Assocs. v. Int'l Bus. Machs.

Corp., 4 N.Y.3d 272, 278 (2005)).

### 3.  Duty to defend

"An insurer's 'exceedingly broad' duty to defend is triggered 'whenever the four corners

of the [underlying] complaint suggest — or the insurer has actual knowledge of facts establishing

— a reasonable possibility of coverage.'"  Columbus McKinnon Corp. v. Travelers Indem. Co., 367

F. Supp. 3d 123, 141 (S.D.N.Y. 2018) (quoting Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640,

648 (1993) (internal citations omitted)); see Admiral Ins. Co. v. Weitz & Luxenberg, P.C., No. 02

Civ. 2195 (RWS), 2002 WL 31409450, at *3 (S.D.N.Y. Oct. 24, 2002) (explaining that "[c]ourts in New York have held that an insurer's duty to defend and to pay defense costs under liability insurance policies must be construed broadly in favor of the policyholder.").

"An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004) (internal citations omitted). "[I]f the wording on the duty to defend is clear and unambiguous, it will be enforced according to its terms." Id.

"It is the insured's burden to establish that the claimed loss falls within the scope of the relevant insurance policy, but this burden is met '[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased.'" Columbus McKinnon, 367 F. Supp. 3d at 141 (quoting Mt. Vernon Fire Ins. Co. v. Munoz Trucking Corp., 213 F. Supp. 3d 594, 601 (S.D.N.Y. 2016) (internal citations omitted)); see Admiral Ins. Co., 2002 WL 31409450 at *3 ("If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend.") (citing Technicon Elecs. Corp. v. Am. Home Assur. Co., 74 N.Y.2d 66, 73 (1989)). "The merits of the complaint are irrelevant," and the insurer has a duty to defend "even if debatable theories are alleged in the pleading against the insured." Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 444 (2002) (internal citations omitted). "Conversely, if the allegations interposed in the underlying complaint allow for no interpretation which brings them within the policy provisions, then no duty to defend exists." Bridge Metal Indus., LLC v. Travelers Indem. Co., 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (quoting Atl. Mut. Ins. Co. v. Terk Techs. Corp., 309 A.D.2d 22, 29 (1st Dep't 2003)). "[A]n insurer can be

relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." Allstate Ins. Co. v. Zuk, 78 N.Y.2d 41, 45 (1991). "[D]oubts" about the scope of coverage "are resolved in favor of the insured." Kinsale Ins. Co. v. OBMP NY, LLC, 171 F. Supp. 3d 277, 281 (S.D.N.Y. 2016) (citing MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011)).

"'Additional insured' is a recognized term in insurance contracts, . . . [and] the 'well-understood meaning' of the term is 'an entity enjoying the same protection as the named insured.'" Pecker Iron Works of N.Y. Inc. v. Traveler's Ins. Co., 99 N.Y.2d 391, 394 (2003) (citations omitted). "[T]he standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense." BP A.C. Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 715 (2007). Thus, an insurer's duty to defend an "additional insured [] is not contingent upon a liability finding and [] the obligation of an insurer to provide a defense to an additional named insured under the policy exists to the same extent as it does to a named insured." Id. at 711.

"Under New York law, a primary insurer has the primary duty to defend on behalf of its insured without the right to contribution from an excess insurer." Barber v. RLI Ins. Co., No. 1:06-CV-630 (FJS) (RFT), 2008 WL 5423106, at *2 (N.D.N.Y. Dec. 24, 2008) (citing Gen. Motors Acceptance Corp. v. Nationwide Ins. Co., 4 N.Y.3d 451, 456 (2005)). "An excess insurer may participate in the defense to protect its interest, but the law does not obligate it to do so." Id. (citing Gen. Motors Acceptance Corp., 4 N.Y.3d at 456).

## B. **Application**

### 1. **Duty to defend**

#### a. **USSIC's arguments**

USSIC argues that "the allegations of the Underlying Action clearly trigger Harleysville's duty to defend its additional insured, the Owner, in the Underlying Action." (ECF No. 36 at 8). USSIC points out that Aggressive agreed to, and did, include the Owner as an additional insured "for claims caused in whole or in part by Aggressive's negligent acts or omissions during Aggressive's operations." (Id. at 9 (citing ECF No. 38-1 ¶¶ 15, 17, 19)). USSIC explains that, under the Contract, Aggressive agreed to "supervise and direct the Work," which E.M., Garcia's employer, agreed to perform pursuant to the Subcontract. (Id. at 10). Because Garcia was injured while working on the Project, and the Third Party Complaint alleges that those injuries "were caused solely by reason of the primary, active and affirmative negligence, recklessness and/or breach of contract of Aggressive," USSIC contends that there is "a reasonable possibility that Aggressive proximately caused [Garcia's] injury [that] triggers Harleysville's duty to defend the Owner." (Id. (citing ECF No. 38-1 ¶ 12)); (see ECF No. 33-2 at 33 ¶ 20).

#### b. **Harleysville's arguments**

Harleysville argues that in neither the Underlying Action nor the Third Party Complaint is it alleged that "the work of Aggressive" caused Garcia's injury. (ECF No. 38 at 10). Because Aggressive was "not the proximate cause of the claimed injury," Harleysville maintains that it has no duty to defend the Owner as an additional insured. (Id.) Harleysville further argues that the USSIC Policy is primary, and the Harleysville Policy is excess, such that USSIC has the "sole and primary obligation" to defend the Owner in the Underlying Action. (Id. at 11–18).

c.  <u>Analysis</u>

The Court finds that Harleysville has a duty to defend the Owner, as an additional insured, in the Underlying Action because there is a "reasonable possibility" that coverage of the Owner, under the Harleysville Policy, is implicated by the Third Party Complaint.  See <u>Old Republic Gen. Ins. Corp. v. Consol. Edison Co. of N.Y. Inc.</u>, 193 A.D.3d 595 (1st Dep't 2021).

The New York Court of Appeals has explained that "where an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." <u>Burlington Ins. Co. v. NYC Transit Auth.</u>, 29 N.Y.3d 313, 317 (2017).  The purpose of this type of endorsement is "to provide coverage for an additional insured's vicarious or contributory negligence, and to prevent coverage for the additional insured's sole negligence."  <u>Id.</u> at 326 (citation omitted).  Where a policy contains this endorsement, for the coverage to apply to the additional insured, there must be "a showing that the named insured's causal conduct was negligent or otherwise at fault."  <u>Old Republic</u>, 193 A.D.3d at 623.  If the named insured was not a proximate cause of the underlying injury, there is no duty to defend.  See <u>Burlington</u>, 29 N.Y.3d at 326 (holding that, where named insured "was not at fault" and "employee's injury was due to [additional insured's] sole negligence," insurer had no duty to defend additional insured); <u>Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.</u>, 165 A.D.3d 1646, 1647 (4th Dep't 2018) (holding that, where it was "undisputed" that named insured "was not responsible" for causing employee's fall, insurer had no duty to defend additional insured); <u>Hanover Ins. Co. v. Phila. Indem. Ins. Co.</u>, 159 A.D.3d 587, 588 (1st Dep't 2018) (holding that, where "the acts or omissions of [named insured] were not a proximate cause of the [employee's] injury" and "the sole proximate cause of the

injury was the additional insured," insurer had no duty to defend additional insured).  In contrast, where there are allegations that the named insured <u>was</u> a proximate cause of the underlying injury, the insurer has a duty to defend.  <u>See</u> <u>Old Republic</u>, 193 A.D.3d at 595 (holding that allegations that named insured "knew" of potentially malfunctioning elevator in which employees were injury and "was a proximate cause of the bodily injuries," insurer's "duty to defend [was] triggered"); <u>All State Interior Demolition Inc. v. Scottsdale Ins. Co.</u>, 168 A.D.3d 612, 612 (1st Dep't 2019) (holding that allegations in the complaint and third party complaint suggesting that named insured was negligent were "sufficient to trigger [insurer's] duty to defend" additional insured).

In analyzing Harleysville's obligations in this case, the Court begins from the well-recognized premise, mentioned above, that "an insurer's duty to defend [] is 'exceedingly broad,'" <u>Rapid-Am. Corp.</u>, 80 N.Y.2d at 648 (citation omitted), and is triggered when the pleadings "contain[] <u>any</u> facts or allegations which bring the claim <u>even</u> <u>potentially</u> within the protection purchased. . . ."  <u>Mt. Vernon Fire</u>, 213 F. Supp. 3d at 601 (emphasis added) (internal citations omitted).  "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier."  <u>Euchner-USA, Inc. v. Hartford Cas. Ins. Co.</u>, 754 F.3d 136, 141 (2d Cir. 2014) (quoting <u>Brook Shopping Ctr. v. Liberty Mut. Ins. Co.</u>, 80 A.D.2d 292, 294 (1st Dep't 1981)).  In determining the existence of a reasonable possibility of coverage under the Harleysville Policy for the Owner in the Underlying Action, the question for the Court becomes whether, in response to USSIC's Motion, Harleysville has "establishe[d] as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify [the Owner] under" the Harleysville Policy.  <u>Zuk</u>, 78 N.Y.2d at 45.  To

answer this question, the Court examines "the four corners of [the] pleadings," <u>Auto. Ins. Co. of Hartford v. Cook</u>, 7 N.Y.3d 131, 137 (2006) (citation omitted), to determine whether the allegations, "liberally construed," are "within the embrace of the [Harleysville] [P]olicy." <u>Century 21 v. Diamond State Ins. Co.</u>, 442 F.3d 79, 83 (2d Cir. 2006) (quoting <u>Colon v. Aetna Life & Cas. Ins. Co.</u>, 66 N.Y.2d 6, 8 (1985)).

In the Underlying Action, Garcia alleged that the Owner (and Feil) "hired and/or retained certain contractors to perform construction work, labor and/or services" at the Owner's premises, and that he "was an employee of one of the contractors, lawfully and properly upon the premises performing construction work." (ECF No. 33-1 ¶¶ 11, 13). Garcia alleged that the Owner (and Feil) as well as "their agents, servants and/or employees were negligent, reckless and careless" resulting in his injuries. (<u>Id.</u> ¶¶ 22–23; <u>see id.</u> ¶¶ 20–21). Garcia also alleged that the Owner, Feil, and their "agents, servants and/or employees had actual and/or constructive notice of the dangerous and defective conditions existing upon the work site." (<u>Id.</u> ¶¶ 24, 25). Garcia disclaimed any fault or culpable conduct of his own. (<u>Id.</u> ¶ 26). Garcia does not mention E.M. or Aggressive by name, (<u>see id.</u>), but the Third Party Complaint, which attaches Garcia's complaint as an exhibit, alleges that if Garcia:

> was caused to sustain damages as alleged in [his] complaint, which is denied by [the Owner], then such damages were caused solely by reason of the primary, active and affirmative negligence, recklessness and/or breach of contract of Aggressive, and any liability on the part of [the Owner] is vicarious, passive and secondary only.

(ECF No. 33-2 ¶ 20). The Third Party Complaint also references Aggressive's obligation "to maintain a [CGL insurance policy] providing coverage to [the Owner] and Aggressive for incidents such as [Garcia's] claimed incident." (<u>Id.</u> ¶ 10).

Turning to the Harleysville Policy, the language of the Additional Insured Endorsement (ECF No. 33-5 at 34), is identical to the language the New York courts in <u>Burlington</u>, <u>Old Republic</u>, <u>Pioneer</u>, and <u>Hanover</u> held would trigger a duty to defend if there were underlying allegations that the named insured was the proximate cause of the employee's injuries.  <u>See</u> <u>Burlington</u>, 29 N.Y.3d at 323–24; <u>Old Republic</u>, 193 A.D.3d at 595; <u>Pioneer</u>, 165 A.D.3d at 1647; <u>Hanover</u>, 159 A.D.3d at 588.

The Court finds that the allegations in the Underlying Action—Garcia's allegations combined with those in the Third Party Complaint—when "liberally construed," are "within the embrace of the [Harleysville] [P]olicy."  <u>Century 21</u>, 442 F.3d at 83.  Garcia alleges that he was injured while working the Project as an employee of E.M., which, pursuant to the Subcontract, was "acting on [Aggressive's] behalf."  (ECF No. 33-5 at 34).  Aggressive, in turn, was "performing operations" for the Owner, which Aggressive had agreed in the Contract "be added as an additional insured on" the Harleysville Policy.  (<u>Id.</u>)  This is sufficient, under New York law, to satisfy the "'caused by' requirement" in the Harleysville Policy.  <u>Zurich Am. Ins. Co. v. Harleysville Ins. Co.</u>, 194 F. Supp. 3d 253, 257 (S.D.N.Y. 2016); <u>Kel-Mar Designs, Inc. v. Harleysville Ins. Co. of N.Y.</u>, 127 A.D.3d 662 (1st Dep't 2015) (holding that insurer had duty to defend additional insured with respect to injury suffered by subcontractor's employee while performing operations for additional insured).  As the Third Party Complaint alleges, it was a requirement of the Contract that Aggressive obtain a CGL insurance policy that contained an Additional Insured Endorsement covering the Owner for bodily injuries such as those Garcia allegedly sustained arising from acts or omissions of Aggressive or those "acting on [its] behalf."  (ECF No. 33-5 at 34).  In addition, as the Owner asserts in the Third Party Complaint, Aggressive's negligence or recklessness may have

been the cause of Garcia's injuries.  (ECF No. 33-2 ¶ 20).  See All State Interior Demolition, 168

A.D.3d at 613 (holding that insurer's duty to defend was triggered where third party complaint,

which referenced the employee's complaint, alleged that the named insured was negligent).

Because there is a reasonable possibility that Garcia's injury fell within the scope of the

Harleysville Policy, the Court cannot say that "there is 'no possible factual or legal basis'" on

which Harleysville's duty to indemnify could attach, and Harleysville cannot avoid its duty to

defend the Owner.  Century 21, 442 F.3d at 82–83 (quoting Servidone Constr. Corp. v. Sec. Ins.

Co. of Hartford, 64 N.Y.2d 419, 424 (1985)); see L&B Estates, LLC v. Allstate Ins., 71 A.D.3d 834,

836 (2d Dep't 2010) (holding that additional insured "established its prima facie entitlement to

judgment as a matter of law against [insurer] by submitting . . . the [] policy, which established

that it was an additional insured with respect to [the personal injury] claim, and that [the insurer]

had refused to provide coverage").

Harleysville claims that it has no duty to defend because "Aggressive was not the

proximate cause" of Garcia's injuries.  (ECF No. 38 at 6, 10).  As the New York Court of Appeals

has explained, the concept of proximate cause "stems from policy considerations that serve to

place manageable limits upon the liability that flows from negligent conduct," and "a variety of

factors may be relevant in assessing legal cause."  Derdiarian v. Felix Contr. Corp., 51 N.Y.2d 308,

314–15 (1980).  Contrary to Harleysville's decisive assessment of proximate cause based only on

the pleadings in the Underlying Action, the Court's analysis above of the allegations in Garcia's

complaint and the Third Party Complaint suggests that Aggressive's acts or omissions may have

been a proximate cause, which is all that is necessary to trigger the duty to defend.  Liberty Mut.

Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp. 3d 260, 272 (S.D.N.Y. 2011) (finding that,

because it was "not establish[ed] with certainty" that named insured "did not proximately cause the accident," duty to defend additional insured was triggered).  To the extent that Harleysville is arguing that an intervening act or omission of someone other than Aggressive—i.e., the Owner, E.M., Garcia, etc.—caused Garcia's injuries, such an intervening act, if "normal or foreseeable," does not preclude a finding that Aggressive "proximately caused [Garcia's] injury."  Woodling v. Garrett Corp., 813 F.2d 543, 555–56 (2d Cir. 1987).  The possibility that the acts of the Owner, or anyone else, may have intervened between Aggressive's acts (or omissions) and Garcia's injury does "'not automatically sever[]" the "causal connection.'"  Liberty Mut. Ins. Corp., 505 F. Supp. 3d at 272 (quoting Derdiarian, 51 N.Y.2d at 315).

The allegations in this case are unlike those in cases where there was no duty to defend the additional insured because it was undisputed that the named insured was not the proximate cause of the employee's injuries.  In Burlington, for example, the additional insured "acknowledged its sole responsibility for the accident," such that it was undisputed that the named insured "was not at fault for the injuries."  Burlington, 29 N.Y.3d at 319; see id. at 317 (noting that facts were "undisputed").  Because the policy in Burlington, like the Harleysville Policy, was "limited to those injuries proximately caused by" the named insured, the insurer had no duty to defend the additional insured.  Id. at 321.  Similarly, in Hanover, it was undisputed that "the sole proximate cause of the injury was the additional insured," not the named insured, and therefore the insurer had no duty to defend the additional insured.  159 A.D.3d at 588.  In Pioneer, because "it [was] undisputed that [the named insured] was not responsible for clearing ice and snow from the parking lot and that [the employee's] fall resulted from her slipping on the

ice or snow, . . . the injuries were not 'caused, in whole or in party, by" the named insured, and therefore no duty to defend the additional insured.  165 A.D.3d at 1647.

Here, the proximate cause of Garcia's injuries is <u>not</u> undisputed, and it remains a possibility that Aggressive will be deemed to have been <u>a</u> proximate cause.  Harleysville's bare assertion in its Opposition, (ECF No. 38-1), without any factual support, that Aggressive was not a proximate cause of Garcia's injuries, is insufficient to defeat the Motion.  <u>See</u> <u>Gibson v. Am. Broad. Cos.</u>, 892 F.2d 1128, 1132 (2d Cir. 1989) (explaining that the party opposing summary judgment "must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present").  Given the allegations in Garcia's complaint and the Third Party Complaint, whether the acts of someone other than Aggressive "<u>did</u> sever the causal connection [is] a question of fact," <u>Liberty Mut. Ins. Corp.</u>, 505 F. Supp. 3d at 272.  Because Harleysville has not established as a matter of law that that "there is no possible factual or legal basis on which it might eventually be obligated to indemnify [the Owner] under" the Harleysville Policy, <u>Zuk</u>, 78 N.Y.2d at 45, the Court finds that Harleysville has a duty to defend the Owner in the Underlying Action.

### 2.  <u>Allocation of defense costs</u>

#### a.  <u>USSIC's arguments</u>

USSIC argues that its obligations under the USSIC Policy only apply to the Owner's defense costs in "excess of the SIR"—<u>i.e.</u>, above $100,000—in contrast to the Harleysville Policy, which "has no SIR and thus applies on a 'first dollar' basis."  (ECF No. 36 at 11).  Although both the Harleysville Policy and the USSIC Policy have identical Other Insurance Provisions, USSIC argues that because the Harleysville Policy does not have an SIR, the Harleysville Policy must be deemed

the primary policy and the USSIC Policy the excess, such that Harleysville has the obligation to pay the first $100,000 of the Owner's defense costs, and split those costs equally thereafter. (Id. at 13–14).

### b.  Harleysville's arguments

Harleysville argues that the USSIC Policy is the primary policy, and the Harleysville Policy is excess. (ECF No. 38 at 11). The fact that the Owner is the named insured under the USSIC Policy, Harleysville argues, indicates that the USSIC Policy is the primary policy. (Id. at 12–13). As to USSIC's SIR argument, Harleysville maintains that this is a new, procedurally defective claim on which summary judgment is not appropriate. (Id. at 15). In any event, Harleysville contends, USSIC, as the primary insurer, has the primary duty to defend the Owner without the right to contribution from Harleysville. (Id. at 16). Finally, Harleysville maintains that Garcia's claimed damages far exceed the SIR, such that USSIC already has a duty to defend—and is defending— the Owner in the Underlying Action, further indicating that the USSIC Policy is primary. (Id. at 18 (referring to ECF No. 34 ¶ 4)).

### c.  Analysis

In this case, like many insurance coverage disputes, the parties each "take[] a different view regarding the priority of coverage their respective policies provide for" the Owner. Zurich, 194 F. Supp. 3d at 259. As one court in this District has explained, "[d]etermination of this issue turns on interpretation of the insurance policies' 'other insurance' clauses[.]" Id. (citing Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa., 65 A.D.3d 12, 18 (1st Dep't 2009); see Hartford Underwriters Ins. Co. v. Hanover Ins. Co., 122 F. Supp. 3d 143, 146–47 (S.D.N.Y. 2015). Under New York law,

> an "other insurance" clause "limit[s] an insurer's liability where other insurance
> may cover the same loss" . . .  This may be accomplished by providing that the
> insurance provided by the policy is excess to the insurance provided by other
> policies, in which case the "other insurance" clause is known as an excess clause
> . . . Alternatively, an "other insurance" clause may limit the insurer's liability by
> providing that, if other insurance is available, all insurers will be responsible for a
> stated portion of the loss; an "other insurance" clause of this kind is known as a
> pro rata clause.
> . . .
> It is well established under New York law that, where one of two concurrently
> applicable insurance policies contains an excess "other insurance" clause and the
> other contains a pro rata "other insurance" clause, the excess clause is given
> effect, meaning that the coverage under the policy containing the excess clause
> does not come into play, and the carrier's duty to defend is not triggered, until the
> coverage under the policy containing the pro rata clause has been exhausted.

Sport Rock Int'l, 65 A.D.3d at 18–19 (internal citations omitted).  Where both policies contain an

excess "other insurance" clause, "the excess coverage clauses are held to cancel out each other

and each insurer contributes in proportion to its limit amount of insurance . . . ." U.S. Fire Ins.

Co. v. Federal Ins. Co., 858 F.2d 882, 885 (quoting Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.,

51 N.Y.2d 651, 655 (1980)); see State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 373-74

(1985) (explaining that, where both excess clauses "cover the same risk on the same level . . .

the excess coverage clauses are deemed to cancel each other out and each carrier is required to

contribute ratably in such proportion as its policy limit bears to the total of all policy limits").  This

"general rule of ratable contribution is inapplicable, however, if it 'would effectively deny and

clearly distort the plain meaning of the terms of the policies.'"  Id. (quoting Lumbermens, 51

N.Y.2d 651).

Here, both the USSIC Policy and the Harleysville Policy contain excess "other insurance"

clauses, i.e., they both "purport to be excess to the other."  Kel-Mar Designs, 127 A.D.3d at 662.

(Compare ECF No. 33-5 at 25–26 with ECF No. 34-1 at 31–32).  The clauses are identical, and

therefore "cover the same risk on the same level." State Farm, 65 N.Y.2d at 373.  The language

of the Other Insurance Provision in both the Harleysville and USSIC Policies are identical to the

language that the court in Zurich held "unambiguously provides only excess coverage vis a vis

policies in which [the additional insured] was added as an additional insured."  Zurich, 194 F.

Supp. 3d at 261.[4]  In addition, the Harleysville Policy—but not the USSIC Policy—contains the

Amendment, which requires that it be "excess over any other valid and collectible insurance

available to the additional insured . . . unless a written contract specifically requires that this

insurance be primary and that the additional insured's primary coverage be non-contributory."

(ECF No. 33-5 at 35).  It is undisputed that the Contract did not require the Harleysville Policy to

be primary.  (ECF Nos. 36 at 13; 38 at 12; 49 at 16:9–14).  Therefore, under New York law, because

both the USSIC and the Harleysville Policies purport to be excess over the other, "the policies

cancel each other out, and [Harleysville and USSIC], as co-insurers on a primary basis, are

required to share [the Owner's] defense costs in the [U]nderlying [A]ction."  Kel-Mar Designs,

127 A.D.3d at 662.

Harleysville argues that, because the Owner is a named insured under the USSIC Policy,

and only an additional insured under the Harleysville Policy, this demonstrates that the "USSIC

Policy would be primary and the Harleysville [P]olicy would be excess."  (ECF No. 38 at 13).  The

problem with Harleysville's argument, however, is that it ignores that under New York law, an

additional insured "enjoy[s] the same protection as the named insured."  Pecker Iron, 99 N.Y.2d

---

[4] What the court in Zurich defined as the "Zurich Policy" stated that "(1) [t]his insurance is excess over . . .
(b) [a]ny other primary insurance available to [the additional insured] covering liability for damages arising
out of the premises or operations, or the products and completed operations, for which [the additional
insured] ha[s] been added as an additional insured by attachment of an endorsement."  194 F. Supp. 3d
at 260.

at 394 (citations omitted).  In determining Harleysville's obligations to defend the Owner, then, the Court must apply "the same standard as that used to determine if a named insured is entitled to a defense." BP A.C. Corp., 8 N.Y.3d at 715.  "As an additional insured on the Harleysville Policy, [the Owner] was entitled to the same general liability insurance that [Aggressive] received[,]" which renders the Harleysville Policy as "primary insurance for [the Owner]." Nat'l Fire Ins. Co. of Hartford v. Harleysville Ins. Co., No. 60631/09, 2011 N.Y. Misc. LEXIS 4249, at *5 (Sup. Ct. N.Y. Cnty. Aug. 21, 2011).  Because, however, the USSIC and Harleysville Policies have the identical Other Insurance Provision, those provisions "cancel each other out" and each insurer is required to contribute pro rata. Id. at *6. Because both policies have the same limit—$1 million (ECF Nos. 34-1 at 20; 33-5 at 12)—USSIC and Harleysville must "defend and indemnify [the Owner] in equal shares, and share equally in the defense of [the Owner] in the Underlying [A]ction." Nat'l Fire Ins. Co. of Hartford, 2011 N.Y. Misc. LEXIS 4249 at *6.

The remaining question is the allocation of coverage for the first $100,000 of the Owner's defense costs in the Underlying Action.  The USSIC Policy has an SIR, while the Harleysville Policy does not.  (Compare ECF No. 34-1 at 37 with ECF No. 33-5).  An SIR is not "other insurance," as that term is used in the Other Insurance Provision here, but only a "representation by" the Owner "that it has the financial means to pay any judgments against it." Consol. Edison Co. of N.Y., Inc. v. Liberty Mut., 193 Misc.2d 399, 401 (Sup. Ct. N.Y. Cnty. 2002); see Guercio v. Hertz Corp., 40 N.Y.2d 680, 684 (1976) ("[Generally], self-insurance is no[t] insurance [at all] but [rather] an assurance . . . that judgments will be paid.").  Applying the plain language of the insurance policies, then, the Court finds that USSIC has no duty to defend the Owner in the Underlying Action until the Owner has paid $100,000 in defense costs, while Harleysville must pay defense

costs from the first dollar.  See Consol. Edison Co. of N.Y., Inc. v. Liberty Mut., 193 Misc.2d at 402

(granting summary judgment and holding that insurer was obligated to defend additional insured

in underlying action, notwithstanding additional insured's self-insurance).   Accordingly,

Harleysville is obliged to pay the first $100,000 of the Owner's defense costs in the Underlying

Action.

### IV. CONCLUSION

For the reasons set forth above, USSIC's Motion is GRANTED as follows:

(1)  Harleysville has a duty to defend the Owner in the Underlying Action;

(2)  Harleysville is responsible for the first $100,000 of the Owner's defense costs; and

(3)  Harleysville and USSIC are each responsible for 50% of the Owner's defense costs in
     excess of $100,000.

The Clerk of Court is respectfully directed to close ECF No. 32.

Dated:        New York, New York
              September 3, 2021

                                        SO ORDERED.


                                        _____
                                        SARAH L. CAVE
                                        United States Magistrate Judge